UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARLENE FLOWERS,

    Plaintiff,

vs.

Case No. 04-71928
HON. GEORGE CARAM STEEH

HONIGMAN MILLER SCHWARZ AND
COHN, LLP,

    Defendant.
_____/

ORDER GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ON SEXUAL HARASSMENT CLAIM

    This matter is before the court on a motion for summary judgment brought by defendant, Honigman Miller Schwartz and Cohn, LLP ("Honigman"), on Count One of plaintiff, Darlene Flowers', complaint alleging disparate treatment and hostile work environment.  For the reasons set forth below, it is recommended that defendant's motion be GRANTED.

FACTUAL BACKGROUND

    Plaintiff began working at Honigman in March 2000 as a temporary secretary.  At that time, she was employed by a temporary agency.  On June 19, 2000, Honigman hired plaintiff to work as an auxiliary secretary in its Environmental Department.  By the end of the month, she was reassigned to work specifically for two attorneys, Lee Johnson and Stuart Weiss, who worked in the Environmental Department.  On or

1

around September 11, 2001, plaintiff moved from that department to the Real Estate Department at the request of Weiss who also transferred there. After the move, plaintiff worked only for Weiss until her reassignment in May 2002 to attorney Mitch Meisner. Plaintiff was then terminated on August 16, 2002 for alleged tardiness and other policy violations.

While working in the Environmental Department plaintiff asserts she was subjected to a senior attorney's vulgarity. Plaintiff alleges that attorney Joseph Polito, a partner at Honigman, made several comments with sexual connotations to the plaintiff and other females in the office. Plaintiff claims that Polito also used expletives throughout her employment when referring to her and others in the department. Plaintiff took particular offense to Polito's use of two specific expletives, "fuck" and "bitch." Plaintiff believes the former to have a sexual connotation, and considers the latter offensive in that it refers to a female dog. Plaintiff indicated a few contacts with Polito that she found objectionable. On one instance, Polito, while on the speakerphone with Weiss, referred to her in a derogatory manner. The other two instances occurred while Polito was leaving either Weiss or Johnson's office, whereupon he exited saying a disparaging comment. No other offensive encounters transpired after her relocation from the Environmental Department to the Real Estate department.

In addition, plaintiff provided testimony from Weiss and secretaries who worked for Polito. Paintiff refers to the experiences of four other secretaries: Lisa Mattias, Shaunique Strickland, Leslie Anthony, and Marty Briscoe. Plaintiff's evidence shows that Briscoe resigned from her employment in 1991 because of her work conditions as

Polito's secretary. However, the record reflects that the fear was not a result of Polito's sexual discrimination. Apparently, it resulted from Polito's work personality. Briscoe complained of "worrying about being pressured into overtime," "wanting to be treated like a human being who would like to get some respect and kindness," "yelling [and] lies," "taking care of [Polito's] personal business like condo payments," and "going to [the] so-called personnel department for help and getting nothing."

Mattias was employed by Honigman from August 1993 to February 1998. Her employment also ended before plaintiff was hired. Mattias testified that she was subjected to sexual conduct, such as Polito physically grabbing her, engaging in phone sex with her, and chasing her on the freeway. Additionally, she testified that she heard Polito refer to Anthony as a "bitch" three times throughout her employment and she witnessed Polito pinch Anthony at least three times, pull her hair, and throw objects at her. Furthermore, Mattias states that she believes the management at Honigman was aware of Polito's conduct, yet she does not state that she submitted complaints about Polito's conduct toward her.

During Flower's employment at Honigman, Strickland and Anthony were working as Polito's secretaries. Stickland and Anthony testified that Polito referred to Anthony in derogatory terms. Stickland also witnessed Polito "pluck Leslie Anthony in the back of her head with his finger hard enough to make a thumping sound," and call Anthony insulting terms. Anthony further corroborated Stickland's statements. Stickland states that she complained about Polito's behavior to Honigman's Human Resources department.

3

Plaintiff's claims of sexual discrimination are based solely on Polito's conduct and communication. She asserts his behavior toward the women in the office was offensive and pervasive enough to support her disparate treatment and hostile work environment claims.

## STANDARD OF REVIEW

A moving party is entitled to summary judgment as a matter of law pursuant to Rule 56(c) of the Federal Rules of Civil Procedure when it has demonstrated that "there is no genuine issue as to any material fact." "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." Celotex Corp v. Catrett, 477 U.S. 317, 327 (1986)(internal quotes omitted). The party bringing the motion for summary judgment has the initial burden of demonstrating the absence of a genuine issue of material fact. To successfully defeat a motion, the non-moving party has to make an affirmative showing of "evidence on which the jury could reasonably find" in its favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). The opposing party cannot rely on a "mere possibility," Mitchell v. Toledo Hosp., 964 F.2d 577, 581 (6th Cir. 1992), or "hope that the trier will disbelieve the movant's denial of a disputed fact." Street v. J.C.Bradford & Co., 886 F. 2d 1472, 1479 (6th Cir. 1989). A "mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson, 477 U.S. at 252.

ANALYSIS

Plaintiff's claims arise under Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"). Plaintiff asserts two theories of sexual discrimination: disparate treatment and sexual harassment hostile work environment.

I. Disparate Treatment

In order to prevail under a disparate treatment theory, plaintiff must show that she was "treated differently from comparably situated persons who were not members of the protected class," and thus subjected to an adverse action because of her sex. Stanisz v. Federal Express Corp., 2003 WL 216608885, 16-17 (Mich. Ct. App. July 15, 2003).

Plaintiff must establish the disparate treatment by introducing direct evidence or by providing evidence that establishes a prima facie showing. Abeita v. Transamerica Mailings, Inc., 159 F.3d 246 (6th Cir. 1998). Direct evidence is "evidence that, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Stanisz, 2003 WL 216608885 at 17 (citing Hazle v. Ford Motor Co, 464 Mich. 456, 462 (2001), and Harrison v. Olde Financial Corp., 225 Mich.App. 601,610 (1997)). Plaintiff's other option is to establish a prima facie showing of discrimination, consistent with analysis found in McDonnell Douglass Corp v. Green 411 U.S. 792 (1973). "To establish a McDonnell Douglas prima facie case, a plaintiff must show that: (1) plaintiff was a member of a protected class; (2) plaintiff suffered an adverse employment action; (3) plaintiff was qualified for the position; and (4) plaintiff was replaced by a person outside the protected class." Abeita, 159 F. 3d at 249.

The only employment action taken by defendant was plaintiff's transfer to another department, as requested by attorney Weiss, for whom plaintiff worked.  The transfer was not an adverse action motivated by discrimination.  Rather, it was a result of attorney Stuart Weiss' request to move from the department due to Polito's conduct generally and specifically toward him.  Plaintiff's transfer was a consequent of Weiss' transfer resulting from Polito's conduct toward Wiess, not a consequent of Polito's conduct toward plaintiff.  Moreover, plaintiff does not present evidence that her position in the Environmental Department is now held by a man.  Plaintiff has failed to prove the first and fourth element of the disparate treatment analysis.

Plaintiff has failed to show that she was treated "differently in terms and conditions of her employment than were male employees."  Vermett v. Hough, 627 F. Supp. 587 (W.D.Mich. 1986).  On the contrary, the evidence shows that both men and women were similarly subjected to Polito's behavior and that employment conditions affected both similarly.

II.  Hostile Work Environment

Plaintiff's second claim arises under ELCRA, modeled after Title VII, which prohibits sexual harassment in employment with the purpose of eradicating "serious demeaning and degrading conduct based on sex in the workplace."  Radtke v. Everett, 442 Mich. 368, 387 (1993).  Courts look to Title VII jurisprudence when interpreting ELCRA, insofar as the two Acts correspond.  There are nonetheless pertinent differences between the enactments.  In relevant part, ELCRA, unlike Title VII, expressly defines two types of sexual harassment.  ELCRA provides for a cause of

6

action for hostile work environment sexual harassment, which is defined, in relevant part, as:

> Discrimination because of sex includes sexual harassment. Sexual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions:
>
> . . . .
>
> (iii) The conduct or communication has the purpose or effect of substantially interfering with an individual's employment, public accommodations or public services, education, or housing, or creating an intimidating, hostile, or offensive employment, public accommodations, public services, educational or housing environment.

MCL §37.2103(i)

Courts apply an objective standard test to determine the validity of a sexual harassment claim. The court in Schemansky v. California Pizza Kitchen, Inc., 122 F. Supp. 2d. 761, 772 (E.D. Mich. 2000), stated:

> [A] sexually hostile work environment claim under Michigan law is actionable only when, in the totality of circumstances, the work is so tainted by sexual harassment that a reasonable person would have understood that the defendant's conduct or communication had either the purpose or effect of substantially interfering with the plaintiff's employment, or subjecting the plaintiff to an intimidating, hostile, or offensive work environment. To satisfy this requirement, it is generally accepted that the plaintiff must establish that the complained sexual harassment was severe or pervasive. (internal citations and quotations omitted).

Moreover, in accordance with the holding in Radtke, a plaintiff must establish five necessary elements to prove a prima facie case of a hostile work environment:

1. the employee belonged to a protected group;
2. the employee was subjected to communication or conduct on the basis of

7

      sex;
3. the employee was subjected to unwelcome sexual conduct or communication;
4. the unwelcome sexual conduct or communication was intended to or in fact did substantially interfere with the employee's employment or created an intimidating, hostile, or offense work environment; and
5. respondeat superior.

442 Mich. at 382-83, Haynie v. State of Michigan, 468 Mich. 302, 309 (2003).

      The plaintiff satisfies the first criteria given that "all employees are inherently members of a protected class" in a sexual harassment hostile environment case because all employees can be discriminated against on the basis of their sex. Radke, at 442 Mich. at 383.

      A. Communication or Conduct on the Basis of Sex

      A plaintiff must make a showing that "but for the fact of her sex, she would not have been the object of harassment." Haynie, 468 Mich. at 308-09. The harassment must be based on conduct or communication other than that which would be considered offensive to both male and female employees. Paige v. Detroit Edison Co., 2003 WL 21752809, at 2 (Mich. Ct. App. July 29, 2003) (affirming summary judgment; sexually explicit television programs watched at work were offensive to plaintiff and male employees, and plaintiff failed to show that the programs were selected because of her sex). On the other hand, conduct and communication that is "attributable to [defendant's] personality, his management style, and personal conflicts rather than any unlawful discrimination" is insufficient to prove a claim of hostile work environment. Brewer v. Hill, 2000 WL 33407016 at 6 (Mich. Ct. App. Sept. 15, 2000) (name-calling was part of generally hostile work environment attributable to defendant's personality, management style and personal conflicts, rather than unlawful discrimination).

8

Plaintiff seeks to establish a sexual harassment claim on the basis of Polito's crude behavior, his agitated demeanor, and his frequent use of several expletives. Plaintiff's claim is largely undone by her own testimony. Much of the behavior she took offense to is the same behavior that was offensive to her fellow male employees.

The plaintiff alleges that she was subjected to Polito's use of the words "bitch" and "fuck" on the basis of her sex. In particular, plaintiff testified that Polito mumbled expletives under his breath when leaving her desk a few times, and twice referred to her specifically as a "fucking idiot," while Polito was conversing with plaintiff's supervising attorney. Plaintiff described Polito as an agitated and frustrated employee who would roll his eyes, curse under his breath, and use a degrading tone of voice. However, according to plaintiff's testimony, Polito behaved in the same way toward everyone in the department, and they too were offended by the Polito's manners, or lack thereof.

Plaintiff also focuses on the few times Polito stood by her desk and used expletives when she was sitting at her desk at groin level with him, which attributed to the sexual connotation of the words. Plaintiff does not allege that Polito purposefully or intentionally conducted himself in the manner. The fact that plaintiff was sitting at her desk, and Polito was standing near or around it, while he was either mumbling or yelling invectives, is not attributable to her sex. Rather it is a workplace reality, it occurs whenever a person is standing in an office with someone else at a desk. Plaintiff's allegation is centered on the coincidental position vis-à-vis defendant, which viewed in isolation does not constitute conduct on the basis of her sex, evidently attributable to an oversensitive awareness.

In addition, plaintiff has gone to great lengths to show the deplorable behavior to which Polito subjected his personal secretaries, specifically Strickland and Anthony. The other secretaries, Biscoe and Mattias left Honigman prior to plaintiff's employment, the former because of the pressured work conditions and the latter for Polito's alleged inappropriate sexual conduct. None of the deposed secretaries were subjected to the same kind of behavior as were Anthony and Mattias. Neither do they assert that they too have been sexually discriminated. While Mattias' testimony concerning sexual misconduct may provide credence for Flower's claim, Polito's conduct toward one secretary cannot be assumed to apply to another secretary who is remotely related to the first, especially where plaintiff has not shown a pattern of similar behavior. Here, Mattias' situation ended when she resigned, and there is no indication that Mattias' circumstances affected plaintiff, who came to the employ of the firm after Mattias left.

Anthony testified that Polito would throw objects at her and physically hit her, while Strickland testified that Polito would call Anthony words like "cunt," "bitch," and "worthless piece of shit," and further stated that Polito would "pluck [Anthony] in the back of her head with his finger hard enough to make a thumping sound." However disturbing, these actions do not sufficiently make a showing of conduct or communication that is based on the secretaries' gender. Paige 2003 WL 21752809 at 2 (holding that an assault by supervisors was not gender-based conduct that was sexual in nature and thus not a factor the hostile work environment claim)  Moreover, there is very little evidence to infer that Polito's actions toward Anthony were sexually motivated. Even assuming that Anthony's contacts were based on her sex, Anthony's co-secretary,

Strickland, was not subjected to the same conduct, and neither was plaintiff. The fact that Strickland, Flowers, and Anthony are members of the same protected class does not allow plaintiff to impute Polito's conduct with others to plaintiff herself without a genuine connection.

Plaintiff's secretarial position is further attenuated in that she, unlike the other secretaries who have testified, was not a personal secretary to Polito. As a result, she had very few, isolated contacts with him. Furthermore, plaintiff did not claim she witnessed, or even knew, of Polito's alleged physical treatment of Anthony while she was employed at Honigman, and, therefore, cannot say whether Anthony felt she was in a hostile environment. Plaintiff cannot make use of another's potential sexual harassment claim when there is no connection between her and the conduct.

Furthermore, while Polito's comments toward his secretaries upset plaintiff and made her feel uncomfortable, so too did Polito's comments to the male attorneys in the office, and even the expletives that Polito used to refer to work assignments. Plaintiff's complaint is a result of Polito's personality, management style, and personal conflicts, and not a result of sexual discrimination. Brewer, 2000 WL 33407016 at 6.

In plaintiff's case, there was no conduct that created a hostile environment for her. Notwithstanding that other women in the firm had different contacts with the defendant and as a result, experienced different circumstances in their employment, those experiences cannot be vicariously applied to plaintiff.

B. Harassment that is "Sexual in Nature"

The second element requires that the plaintiff allege facts showing she was

subjected to "unwelcome sexual advances," "requests for sexual favors," or "conduct or communication of a sexual nature." Corley v. Detroit Board of Educ., 470 Mich. 274, 279 (2004). Plaintiff in this case does not contend that Polito made either unwelcome sexual advances or requests for sexual favors. The term "sexual in nature" is not defined in the statute. In discussing that phrase, the Michigan Supreme Court concluded "that actionable sexual harassment requires conduct or communication that *inherently* pertains to sex." Id. at 279.

In Stanisz v. Federal Express Corp., 2003 WL 216608885 *23-24(Mich. Ct. App. July 15, 2003), the court found that the plaintiff did not present conduct or communication that was sexual in nature where she demonstrated that an employee referred to her as a "'bitch,' made chauvinistic remarks, used very foul and rude language and was very aggressive, confrontational and nasty." Defendant's use of gender specific expletives alone will not constitute conduct or communication that is "sexual in nature." Paige, 2003 WL 21752809. In granting summary judgment where plaintiff was subjected to gender-specific epithets and rude behavior, the court in Schemansky summed up the law as follows:

> The bottom line in sexual harassment claims is that [the plaintiff] must always prove that the conduct at issue is not merely tinged with offensive sexual connotations, but actually constituted "discrimination ... because of ... sex.

122 F.Supp. 2d. at 775. Like the plaintiffs in Schemansky and Stanisz, plaintiff has failed to show harassment that was sexual in nature. Further, plaintiff's subjective belief that the terms used by Polito are sexual in nature is inadequate for a finding in her favor under an objective standard. Sexual harassment claims

12

based on the ELCRA have failed on facts more compelling than the facts presented by the plaintiff in this case. The fact that Polito used "bitch" solely to refer to women does not make it a comment that is sexual in nature. Several court decisions have held the general use of profanity in an office place alone is not sufficient to bring a claim under ELCRA. The plaintiffs in Stanisz and Schemansky for instance, were both directly and repeatedly referred to as "bitch," whereas the plaintiff here was not directly subjected to the persistent use of foul or offensive language.

In addition, assuming that Polito's physical conduct toward Anthony, his personal secretary, could contribute to a hostile work environment, plaintiff has not shown that the conduct was sexual in nature. Furthermore, Polito used profanity with the other lawyers and secretaries in the office. In most of the instances where an offensive comment was made, the comment was directed to one of Polito's personal secretaries. Here, plaintiff is not accusing defendant of using language to imply or symbolize desires, nor did she prove that the conduct inherently pertains to her sex. Polito's behavior is clearly the result of anger or frustration, and is not sexually motivated. Plaintiff's claim does not survive the analysis under this part of the test.

    C. Conduct Rising to the Level of Hostile Work Environment

The question to be answered in this part of the inquiry is whether a reasonable person would have thought that Polito's sexual conduct or communication was so pervasive as to substantially infuse the atmosphere with

hostility and as a result, interfere with plaintiff's employment or alter the conditions of employment. Radtke, 442 Mich. at 385.

The court in Brewer adopted the Supreme Court's analysis of Title VII and applied it to Michigan's Civil Rights Act:

> [W]orkplace harassment, even harassment between men or women, is [not] automatically discrimination because of sex merely because the words used have sexual content or sexual connotations. 'The critical issue...is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'

Brewer, 2000 WL 33407016 at 5 (quotations omitted), Schemansky, 122 F.Supp.2d at 775.

Analogous to Title VII, the Michigan Civil Rights Act is not a "general civility code." Bennette v. Cinemark U.S.A. Inc., 295 F. Supp.2d 243, 248 (W.D.N.Y. 2003). Neither is it an instrument that "prohibit[s] all verbal or physical harassment in the workplace." Brewer, 2000 WL 33407016 at 5-6 (finding that derogatory comments that were not sexual or sexually motivated were insufficient to establish a sexual harassment hostile work environment claim). The proscription of sexual harassment in the workplace is not "designed to purge the workplace of vulgarity." Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430 (7th Cir. 1995). As a result, courts have been reluctant to find a hostile work environment sexual harassment claim based merely on inappropriate profane language and name-calling. Breithaupt v. Norhern Michigan Hospitals, Inc., 1996 WL 33359766 (Mich. App. 1996)(affirming summary disposition; the "trashy mouth" of plaintiff's supervisor was not sufficient for a prima facie case of harassment).

14

In this case, the plaintiff has demonstrated the hostile character of Mr. Polito, but the hostility and pervasiveness of his crude mannerisms are not targeted at plaintiff as a woman. As her testimony shows, both *men* and women were subjected to Polito's impropriety. The two exceptions being Polito's use of the word "bitch" to exclusively refer to women and his physical and verbal abuse of Anthony. Nonetheless, as stated above, being referred to as a "bitch" alone is not valid grounds to invoke the ELCRA. Furthermore, Polito's conduct and communication directed toward one of his secretaries does not create grounds that plaintiff was likewise subjected to that conduct, where the conduct appears to be a consequence of personal animosity.

Taken as a whole, his general work character did not expose members of one sex "to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." Brewer, 2000 WL 33407016 at 5.

D. Respondeat Superior

The last element of the inquiry is whether, upon a complaint of sexual harassment, the employer "failed to take prompt and adequate remedial action after having been reasonably put on notice of the harassment." Chambers v. Trettco, 463 Mich. 297, 313 (2000). It is not necessary that the plaintiff herself put the employer on notice where an "employee can demonstrate that her employer knew of harassment in the workplace by showing the pervasiveness of the harassment, which gives rise to the inference of knowledge or constructive knowledge" or where "the totality of the circumstances were such that a reasonable employer would have been aware of a substantial probability that sexual harassment was occurring." Sheridan v. Forest Hills

Public Schools, 247 Mich. App. 611 (2001).

Plaintiff demonstrated that Honigman had notice of Polito's general abusive behavior, from two secretaries, Strickland and Anthony. Plaintiff presented a prima facie showing that her former employer knew or should have known of Polito's harassment toward other secretaries and should have addressed it appropriately. In contrast, plaintiff did not demonstrate that her employer knew or should have known that plaintiff was subjected to sexual harassment. Plaintiff neither demonstrated that she was personally sexually harassed, nor did she prove that her employer should have been aware of sexual harassment directed toward her.

## CONCLUSION

In order to prevail on a summary judgment motion, the plaintiff must make a prima facie case by substantiating the abovementioned five elements for a hostile work environment claim. The plaintiff has not done so. Likewise, plaintiff has not established the elements of a claim for disparate treatment. Thus, for the foregoing reasons, it is recommended that the motion for summary judgment be GRANTED.


s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated: May 16, 2005

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on May 16, 2005, by electronic and/or ordinary mail.

s/Josephine Chaffee
Secretary/Deputy Clerk