UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DARLENE FLOWERS,

        Plaintiff,

vs.

        Case No. 04-CV-71928

        HON. GEORGE CARAM STEEH

HONIGMAN MILLER SCHWARTZ
AND COHN. LLP,

        Defendant.
_____/

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON
PLAINTIFF'S RACE DISCRIMINATION AND FAMILY MEDICAL LEAVE ACT CLAIMS

Plaintiff Darlene Flowers, a former legal secretary at defendant Honigman Miller Schwartz and Cohn ("Honigman"), asserts claims for race discrimination under the Michigan Elliott-Larsen Civil Rights Act, and violation of the federal Family and Medical Leave Act ("FMLA"). Defendant filed a motion for summary judgment which comes before the court today. For the reasons that follow, defendant's motion for summary judgment is GRANTED.

FACTUAL BACKGROUND

Plaintiff began working as a temporary secretary in Honigman's Detroit office in March, 2000. At that time, she was employed by a temporary agency. On June 19, 2000, Honigman hired her to work as an "auxiliary" secretary in its Environmental Department. Auxiliary secretaries perform work wherever needed in the department to which they are assigned. On June 30, 2000, Plaintiff was specifically assigned to work for two attorneys, Lee Johnson and Stuart Weiss.

On September 11, 2001, plaintiff moved to the Real Estate department with attorney Weiss, who transferred there.  Mr. Weiss asked her to move with him, and plaintiff wanted to go with him.  In May, 2002, plaintiff stopped working for Mr. Weiss and began to work for attorney Mitch Meisner.

In July, 2001, plaintiff began taking intermittent leave under the FMLA to care for her mother.  Her leave request was approved by Honigman after she provided medical certification that her mother had a serious health condition covered by the FMLA.  Plaintiff also requested, and had approved, a FMLA leave to care for her husband for a few days after he was in an accident.  Between July 17, 2001 and August 15, 2002, plaintiff took off all or part of 59 days under the FMLA.  Plaintiff completed weekly time sheets, and documented on her time sheets any absences or tardiness that were attributable to her FMLA leave.

Legal secretaries at Honigman are permitted some flexibility in their scheduled hours provided that they choose an eight-hour-day that includes the "Core Hours" of 9:30 to 4:00.  Secretaries must also have the written agreement of the attorneys for whom they work and their department coordinators.  Employees are expected to arrive at work on time and are responsible for notifying their department coordinator of any unscheduled absence or late arrival prior to the normal starting time.

In December, 2001, plaintiff requested a 7:30 - 4:30 work schedule, which she felt would better accommodate her mother's illness.  Mr. Weiss and the coordinator allowed her to work that schedule beginning December 3, 2001.  Plaintiff was unable to arrive at work on time with the new schedule, and requested that her schedule revert to 8:30 - 5:00, which Mr. Weiss and the coordinator approved effective January 22, 2002.

Defendant analyzed plaintiff's time sheets, and concluded that in the last eight months of her employment, she was tardy 98 days for reasons unrelated to FMLA leave time.  Defendant believes plaintiff did not always record when she was late on her time sheet, and that therefore the actual number of days tardy is higher than 98.  Plaintiff blamed her tardiness on a variety of different reasons, including oversleeping, car problems, public transportation, and lack of motivation.  Plaintiff was warned about the importance of calling in advance of her regular start time to notify defendant she would be late on at least four occasions.  On February 7, 2002, plaintiff was put on a Performance Enhancement Plan.

Despite these warnings, plaintiff continued to be late for non-FMLA reasons. Two days before her termination, plaintiff sent an email to department coordinator Dista Russell acknowledging her attendance problem and explaining that "[t]here are a lot of reasons why I am not always here at 8:30 or why if I'm late, there's sometimes no call to anyone.  Some of it, (a big part) is motivation.  It is sometimes hard to get up and get here on time when you're coming to work expecting to be treated badly by someone who has difficulties communicating properly to his secretary."  August 14, 2002, referring to supervising attorney Mitch Meisner.

Plaintiff often worked overtime to make up lost time due to her FMLA absences. The Handbook provides that overtime must be authorized in advance by the department coordinator.  Plaintiff was reminded of this policy, yet did not obtain approval when she worked overtime.  Defendant questions whether plaintiff actually worked all of the unapproved overtime reflected on her time sheets.  For example, the building sign-in

sheet and key card records on July 14, 2002 and July 27, 2002 do not verify plaintiff's presence in the building during the time in question.

The Handbook provides that personal calls are limited to two minutes. Plaintiff was counseled about her abuse of the phone policy at her Performance Enhancement Plan meeting on February 7, 2002. On August 5, 2002, Honigman's telephone records establish plaintiff was on the telephone for 80 minutes at 11:22 p.m. while she was supposedly working overtime.

On August 15, 2002, Dista Russell recommended in writing to her immediate supervisor, Julie Ankers, that plaintiff be terminated. Ms. Russell wrote:

> We have met with and counseled Darlene several times. Jo Patria has counseled her several times. Stu Weiss, for whom Darlene previous[ly] worked, talked with her several times about the same issues I discussed with her on August 13. In summary, Darlene's habitual and continuing tardiness, violation of overtime rules, and excessive phone usage are a violation of firm policy and procedure, and are, unfortunately, grounds for termination.

Ms. Ankers approved this recommendation and plaintiff's employment was terminated.

On May 21, 2004, plaintiff filed a lawsuit against Honigman alleging sexual harassment, race discrimination and violation of the FMLA.

### STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001). The Supreme Court has affirmed the court's use of summary judgment as an integral part of

the fair and efficient administration of justice. The procedure is not a disfavored procedural shortcut. Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); see also Cox v. Kentucky Dept. of Transp., 53 F.3d 146, 149 (6th Cir. 1995).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Amway Distributors Benefits Ass'n v. Northfield Ins. Co., 323 F.3d 386, 390 (6th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Redding, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (emphasis in original); see also National Satellite Sports, Inc. v. Eliadis, Inc., 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. Anderson, 477 U.S. at 248,

252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. McLean, 224 F.3d at 800 (citing Anderson, 477 U.S. at 252).

## ANALYSIS

I. Race Discrimination

At the hearing on this motion, plaintiff's counsel stated that he is voluntarily dismissing this claim with prejudice.

II. FMLA Retaliation

To establish a prima facie case of FMLA retaliation, plaintiff must show that (1) she availed herself of a protected FMLA right; (2) she suffered an adverse employment action; and (3) there is a causal relation between the adverse employment action and the exercise of her protected right. Skrjanc v. Great Lakes Power Serv. Co., 272 F.3d 309, 314 (6th Cir. 2001). If plaintiff establishes a prima facie case of FMLA retaliation, then the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse action. Id. at 315. Plaintiff may then survive summary judgment by showing that the employer's proffered reason is a pretext to mask discrimination. Id.

The parties agree that plaintiff properly availed herself of, and was given, intermittent leave under the FMLA. It is also agreed that plaintiff suffered an adverse employment action when she was terminated in August, 2002. Plaintiff argues that a causal connection exists because she was still taking intermittent leave at the time she was terminated. However, plaintiff began taking FMLA leave more than one year prior to her discharge, which makes a causal connection less clear.

Assuming plaintiff makes out a prima facie case of retaliation, there is ample evidence that defendant had a legitimate, non-retaliatory reason to terminate plaintiff -

namely, her numerous and repeated violations of company policy. Defendant's policy required plaintiff to submit proper FMLA documentation in support of her leave time and provide notice of an impending absence as soon as she was aware that leave time would be required. Additional concerns existed regarding tardiness, phone usage, overtime and time sheet accuracy. There is no documentary evidence that plaintiff complied with these polices on a regular basis despite warnings and counseling.

During the November/December, 2001 time frame, defendant expressed concern over plaintiff's schedule. The record confirms that plaintiff failed to show up for work without advance notice, worked overtime without appropriate approval, recorded false start times on her time records, and was often tardy for non-FMLA reasons.

On November 6, 2001, Ms. Patria informed Julie Ankers and Dista Parker Russell by email that "Darlene did not show up for work today (Tuesday) nor did she call. . . . I am sorry this is happening to her mother, but really from a business standpoint, this cannot go on." Ms. Patria is referring to plaintiff's habit of not appearing for work without calling. It is not a fair interpretation of the email that Ms. Patria is suggesting that plaintiff should not be allowed to take FMLA leave.

The November 15, 2001 email from Dista Parker Russell to Kim Thomas, states that Mr. Weiss is having a problem with plaintiff's inconsistent schedule. Mr. Weiss reportedly complained that plaintiff is missing for periods of time and spends much time on the phone. Mr. Weiss asked Ms. Parker Russell to check plaintiff's time sheets. The email concludes by stating, "I'm not certain if she can personally work part time, take a full leave, or what, but her current schedule is not working out." Ms. Thomas responds by saying that plaintiff is on an approved intermittent FMLA leave, which she has not

exhausted.  She also recognizes the need for plaintiff to call in absent in advance when possible, and when not possible, to still call in or have a family member call in on her behalf.  The issue at this point is plaintiff taking time from work, even if authorized under FMLA, without giving notice.  While Ms. Parker Russell's email is conceivably anti-FMLA, it cannot be said to have motivated plaintiff's termination some 9 months later.

Ms. Parker Russell pulled plaintiff's time sheets on November 19, 2001.  She notes some inconsistencies between the times noted on the time sheets and the key card access report.  There is an example of plaintiff "beeping" in at 8:39 a.m., and putting 8:30 on her time sheet.  There is also an example of plaintiff coming in at 7:30 a.m. and putting 8:30 on her time sheet.  Overall she concludes that "it does not seem that the start time on her time sheet has been too far off from that shown on the report."  Plaintiff was counseled on the importance of putting the accurate time on her sheet.  As a result of her inaccurate record keeping, plaintiff was also required to use her key card upon entering and leaving the office.  This is not an adverse employment action in light of the many non-FMLA related tardy days demonstrated by plaintiff's own time sheets.

A follow-up email to plaintiff from Ms. Parker Russell includes the option of a change in work schedule "to assure that workflow remains consistent."  Plaintiff argues that a requirement of consistency is too great a burden to place on her under the FMLA.  With regard to unforeseeable leaves, an employee must give notice to her employer as soon as practicable under the circumstances of the particular case.  This case is not analogous to the case of Cavin v. Honda of America, 346 F.3d 713 (6th Cir. 2003), where the Sixth Circuit held that an employer's requirement of three consecutive working days notice for unforeseeable absences was more strict than contemplated by

8

the FMLA. Id. at 720. In this case, defendant was merely asking that plaintiff call in before the start of her day when she would not be at work.

While there is evidence that Mr. Weiss, and later Mr. Meisner, were unhappy with plaintiff because they could not rely on her to show up for work reliably, the evidence is consistent that they just wanted her to give notice under the firm's policy. There is insufficient evidence for the court to conclude that defendant's proffered reason for plaintiff's termination is a pretext for retaliation under the FMLA. Defendant first warned plaintiff to improve her compliance with polices in the Handbook. After two months without improvement on the part of plaintiff, defendant placed her on a Performance Enhancement Plan. Finally, after more incidents and more warnings, defendant terminated plaintiff's employment on August 15, 2001.

There is no evidence in the record that defendant's decision to terminate plaintiff was pretext for retaliation. Therefore, defendant's motion for summary judgment on retaliation under the FMLA is GRANTED.

## CONCLUSION

For the reasons given, defendant's motion for summary judgment is GRANTED.


s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

Dated: May 16, 2005

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on May 16, 2005, by electronic and/or ordinary mail.

                                                            s/Josephine Chaffee
                                                            Secretary/Deputy Clerk